**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MORDY'S APPLIANCE REPAIR
SERVICE LLC,

                  Plaintiff,

        v.

AMAZON SERVICES LLC,

                  Defendant.

Case No.  1:17-cv-05376-PKC

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................... ii

BACKGROUND ...................................................................................................... 2

ARGUMENT ............................................................................................................ 5

I.     LEGAL STANDARD ..................................................................................... 5

II.    PLAINTIFF LACKS STANDING TO BRING THIS LAWSUIT. ................... 6

      A.    Plaintiff Fails To Allege It Suffered Any Cognizable Injury. ................ 6

      B.    Plaintiff Lacks Antitrust Standing. ..................................................... 10

      C.    Plaintiff Has Not Adequately Pled Potential Competitor Status, and Even if It Had, It Still Fails To Plead an Actual or Threatened Injury-in-Fact ............. 13

III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT. ......................................................................................... 15

      A.    Plaintiff Fails To Allege Any Violation That Could Be Analyzed Under the *Per Se* or "Quick Look" Modes of Antitrust Analysis .................................... 16

            1.    Plaintiff Does Not Allege Facts Supporting a *Per Se* Claim. .................... 16

            2.    Plaintiff Does Not Allege a "*Per Se* Group Boycott." ............................ 17

            3.    Plaintiff's Claims Do Not Qualify for "Quick Look" Treatment. ............ 20

      B.    Plaintiff Fails To Plead the Elements of a Rule of Reason Claim. ....................... 22

            1.    Plaintiff's Alleged Exclusion Does Not Harm Competition ..................... 22

            2.    Plaintiff Has Not Pled Facts to Support an Online Retails Sales Relevant Market. ............................................................................... 24

CONCLUSION ...................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*42nd Parallel N. v. E St. Denim Co.*, 286 F.3d 401 (7th Cir. 2002) ...............................................23

*Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947
    (9th Cir. 1998)........................................................................................................................19

*Am. Sales Co. v. AstraZeneca AB*, 2011 WL 1465786 (S.D.N.Y. Apr. 14, 2011) .......................24

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011) .......................................5

*Arista Records LLC v. Lime Grp. LLC*, 532 F. Supp. 2d 556 (S.D.N.Y. 2007) .................9, 11, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................................5

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162
    (S.D.N.Y. 1995)......................................................................................................................24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................................5, 19

*Biocad JSC v. F. Hoffmann-La-Roche, Ltd.*, 2017 WL 4402564
    (S.D.N.Y. Sept. 30, 2017)......................................................................................................13

*Bogan v. Hodgkins*, 166 F.3d 509 (2d Cir. 1999) .........................................................................23

*Boyd v. AWB Ltd.*, 544 F. Supp. 2d 236 (S.D.N.Y. 2008) ............................................................11

*Cal. Dental Ass'n v. Fed. Trade Comm'n*, 526 U.S. 756 (1999)...................................................20

*Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230 (2d Cir. 2008)...........................................25

*Chudnovsky v. Leviton Mfg. Co.*, 158 F. App'x 312 (2d Cir. 2005)............................................25

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ......................................................................7

*Commercial Data Servers, Inc. v. IBM Corp.*, 166 F. Supp. 2d 891
    (S.D.N.Y. 2001)......................................................................................................................25

*Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46 (2d Cir. 2016)....................................18

*Concord Assocs. v. Entm't Props. Tr.*, 2014 WL 1396524
    (S.D.N.Y. Apr. 9, 2014), *aff'd*, 817 F.3d 46 (2d Cir. 2016) ................................................24

*Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977)........................................16, 17, 21, 23

*Copy-Data Sys., Inc. v. Toshiba Am., Inc.*, 663 F.2d 405 (2d Cir. 1981) ....................................16

*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005) ..............................................10

*Diaz v. Farley*, 215 F.3d 1175 (10th Cir. 2000) ..........................................................................19

*Dominguez v. UAL Corp.*, 666 F.3d 1359 (D.C. Cir. 2012) ..........................................................9

*Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240
    (2d Cir. 1997) ..................................................................................................................16, 23

*Fed. Trade Comm'n v. Indiana Fed'n of Dentists*, 476 U.S. 447 (1986) ......................................18

*Fido's Fences, Inc. v. Radio Sys. Corp.*, 999 F. Supp. 2d 442 (E.D.N.Y. 2014) ....................13, 14

*Finkelman v. NFL*, 810 F.3d 187 (3d Cir. 2016) ...........................................................................9

*Fla. Seed Co. v. Monsanto Co.*, 915 F. Supp. 1167 (M.D. Ala. 1995),
    *aff'd*, 105 F.3d 1372 (11th Cir. 1997) ................................................................................15

*Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38 (2d Cir. 2010) ....................................................7

*Freeland v. AT & T Corp.*, 238 F.R.D. 130 (S.D.N.Y. 2006) ........................................................7

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68 (2d Cir. 2013) .............................11, 12

*Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253 (9th Cir. 2008) ....................................................10

*IBM Corp. v. Platform Sols., Inc.*, 658 F. Supp. 2d 603 (S.D.N.Y. 2009) ....................................11

*In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918 (N.D. Cal. 2015) .....................................10

*In re Dig. Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y. 2011) ......................................12

*In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626
    (S.D.N.Y. Mar. 28, 2017) ....................................................................................................10

*In re Set-Top Cable Television Box Antitrust Litig.*, 2011 WL 1432036
    (S.D.N.Y. Apr. 8, 2011), *aff'd sub nom. Kaufman v. Time Warner*,
    836 F.3d 137 (2d Cir. 2016) ................................................................................................23

*Indium Corp. of Am. v. Semi-Alloys, Inc.*, 611 F. Supp. 379 (N.D.N.Y. 1985),
    *aff'd*, 781 F.2d 879 (Fed. Cir. 1985) ....................................................................................13

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007) ..............................17, 22

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ............................................................................6

*MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172 (2d Cir. 2016) .........................22

*Madison Square Garden, L.P. v. Nat'l Hockey League*, 270 F. App'x 56
(2d Cir. 2008) ...........................................................................................21

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012) ..................................5

*Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290 (2d Cir. 2008) ....................20

*Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972) .................................................7, 8

*Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008),
*aff'd*, 561 U.S. 247 (2010) ...........................................................................5

*Nat'l ATM Council, Inc. v. Visa Inc.*, 922 F. Supp. 2d 73 (D.D.C. 2013) ........................9

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284
(1985) ...............................................................................................18, 19

*NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128 (1998) .................................................17

*Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145 (9th Cir. 2003) ...........................20

*PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101 (2d Cir. 2002) ......................................17

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117 (2d Cir. 2007) ...................5, 7, 10

*Practice Perfect, Inc. v. Hamilton Cty. Pharm. Ass'n*, 732 F. Supp. 798
(S.D. Ohio 1989) .....................................................................................15

*Pungitore v. Barbera*, 506 F. App'x. 40 (2d Cir. 2012) .............................................6

*SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516
(E.D.N.Y. 2013), *aff'd*, 548 F.App'x 741 (2d Cir. 2014) .....................................7, 8

*Scanlan v. Kodak Ret. Income Plan*, 678 F. Supp. 2d 110 (W.D.N.Y. 2010) ...................7

*Sullivan v. Barclays PLC*, 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) .......................11

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ................................................6

*Theatre Party Assocs. v. Shubert Org.*, 695 F. Supp. 150 (S.D.N.Y. 1988) ...................24

*Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186 (2d Cir. 1992) ..................21

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100
(2d Cir. 2008) ....................................................................................6, 7, 8

*Warth v. Seldin*, 422 U.S. 490 (1975) ..................................................................9

*Waxman v. Cliffs Nat. Res. Inc.*, 222 F. Supp. 3d 281 (S.D.N.Y. 2016) .......................7

iv

*Wellnx Life Scis., Inc. v. Iovate Health Scis. Research Inc.*, 516 F. Supp. 2d 270
    (S.D.N.Y. 2007) ..................................................................................................18, 22

*Wooster Indus. Park, LLC v. City of Wooster*, 55 F. Supp. 3d 990
    (N.D. Ohio 2014) ....................................................................................................15

## OTHER AUTHORITIES

15 U.S.C. § 15(a) ...........................................................................................................7

Federal Rule of Civil Procedure 12(b)(1) ..................................................................1, 5

Federal Rule of Civil Procedure 12(b)(6) ................................................................5, 24

Mordy's Appliance Repair Service LLC ("Plaintiff") brings a federal antitrust lawsuit based on speculation that it might be restricted in selling unidentified products on Amazon Marketplace—an online retail marketplace that has enabled consumers all over the world to buy tens of millions of products offered by hundreds of thousands of manufacturers and retailers.  For multiple, independently sufficient reasons, Plaintiff's Amended Complaint does not come close to establishing that Plaintiff has standing to bring these claims, or that if it did, the well-pled allegations make out a cognizable Sherman Act claim.  Amazon has made it possible for customers to shop and compare prices for innumerable products and brands and has spurred competition with countless online and brick-and-mortar retailers; the notion that it is at the hub of an antitrust conspiracy, or that Plaintiff's decision not to attempt to sell on Amazon Marketplace has harmed competition, has no basis in law or fact.

*First*, Plaintiff seeks treble damages and an undefined permanent injunction for conduct supposedly directed at others who sell particular products on Amazon Marketplace; but Plaintiff has never sold, or even attempted to sell, any specific product online and therefore cannot have been injured by any conduct by Amazon.  Plaintiff's claims are premised entirely upon the purported experiences of other businesses, apparently drawn from reading Internet news articles and chatroom discussions.  Plaintiff does not identify any specific product that it wishes to sell, much less allege that it has sought, but been denied, the ability to sell any product on Amazon Marketplace.  Under well-settled law, a plaintiff who has not suffered injury-in-fact, or shown a concrete and particularized threat of suffering injury-in-fact, lacks standing under Article III of the U.S. Constitution and antitrust injury under relevant antitrust law precedent.  With no plaintiff properly before it, the Court lacks subject-matter jurisdiction and should dismiss this lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(1).

*Second*, even if Plaintiff could establish standing under Article III and antitrust injury, it is unable to demonstrate "antitrust standing"—that it is a party entitled to bring a private antitrust claim pursuant to Sections 4 and 16 of the Clayton Act—because it is not an "efficient enforcer" of the antitrust laws as required by the law of this Circuit.  The prospect of innumerable, remote plaintiffs seeking to recover the very same speculative damages as Plaintiff is precisely why the Second Circuit adopted the "efficient enforcer" standard.

*Third*, there is no basis for applying a truncated "*per se*" or "quick look" mode of Sherman Act Section 1 antitrust analysis to the alleged agreements at issue in Counts I and II, and Plaintiff does not plead the requisite harm to competition or a relevant antitrust market, flaws that are fatal to Count III's rule of reason claim.  Antitrust precedent makes clear that vertical agreements are evaluated under the rule of reason.  And under that mode of analysis, Plaintiff has failed to plead facts demonstrating that the alleged potential exclusion of a single seller of unidentified products could possibly harm competition in any relevant market, much less a so-called online retail sales market that comprises a tiny percentage of all retail sales.

The shortcomings in the Amended Complaint are not technicalities, and they are not capable of correction through another amendment.  The Amended Complaint should be dismissed with prejudice.

## BACKGROUND

Plaintiff is a New Jersey "appliance repair business," operating since 2013.  Amended Complaint for Damages and Injunction, Dkt. #21 ("Compl.") ¶ 21.  It alleges that it recently began to notice "that some of the company's customers, who have historically hired Plaintiff to repair their appliances, have begun repairing their appliances by themselves with the assistance of online tutorials on YouTube and other websites," and that, "[u]nderstanding that such

customers and other potential customers nationwide must acquire parts and components in order to repair their appliances, Plaintiff has decided to evolve its business to online sales." *Id.* Plaintiff claims that its "initial business plan" for its evolved business was to sell appliance parts/accessories and consumer electronics/accessories on Amazon Marketplace, a website that allows third-party sellers to sell products online with products offered by Amazon—even though Plaintiff apparently has never sold any product online and does not operate a company website. *Id.* ¶ 23.

Although Plaintiff claims it "has inventory it seeks to list and sell on the Marketplace, including consumer electronics purchased specifically for sale thereon," *id.*, Plaintiff has not identified any specific product that it purportedly would have attempted to sell online if not for the complained-of conduct. Plaintiff's claims are based on alleged fears regarding what it believes might happen if it were to begin to sell through Amazon Marketplace. Nor has Plaintiff experienced any of the conduct about which it complains. Instead, Plaintiff bases its Amended Complaint upon a handful of news articles and what it has found by searching the Internet regarding supposed complaints by other businesses that purport to be actual sellers on Amazon Marketplace. On that basis, Plaintiff assails what it alleges are bilateral agreements between Amazon on the one hand, and manufacturers or "favored" Marketplace sellers on the other.

Plaintiff states that it "has concerns" with alleged agreements that affect three categories of products sold on Amazon Marketplace: (1) "Restricted Brands" (brands that Amazon allegedly does not permit third-party sellers to offer for sale on Amazon Marketplace, supposedly because Amazon and the brand manufacturer agreed to prevent such sales); (2) "Restricted Products/Categories" (categories of products as to which Amazon has a publicly announced policy to refuse to permit third-party sellers to offer on Amazon Marketplace, again

supposedly because Amazon and the relevant product manufacturer agreed to prevent such sales); and (3) "De-listed Products" (products that Amazon "de-lists" or takes down from Amazon Marketplace after they already have been offered for sale there, supposedly because Amazon has reached an agreement with an intellectual property rights-holder to improperly enforce intellectual property rights to eliminate grey market sellers).  Compl. ¶ 10.

Whatever the genesis of Plaintiff's "concerns," Plaintiff does not allege that it ever tried to sell any product on Amazon Marketplace, much less a product that was the subject of any agreement to eliminate certain sellers.  While Plaintiff provides certain examples of the complained of conduct, *see, e.g.*, Compl. ¶¶ 36–40, 103–127, none is based upon any experience Plaintiff itself has had with Amazon.  Instead, Plaintiff alleges that it chose not to sign up as a seller on Amazon Marketplace after it wrote Amazon, asking for preferential treatment not consistent with Amazon's standard agreements and policies—specifically, up-front assurances that any listing it might place would not be subject to removal because of complaints from other sellers or purchasers—and that Amazon did not respond substantively to that correspondence. *Id.* ¶¶ 26–28.  Plaintiff does not allege it is unable to sell its unidentified "consumer electronics" products through any number of other retail channels or by selling directly to the public (either by creating its own website or by selling from its store).

Plaintiff asserts three types of actions under Section 1 of the Sherman Act:  a *per se* claim, a "quick look" claim, and a rule of reason claim, all premised on the very same underlying conduct.  Compl. ¶¶ 136–177.  Plaintiff bases its claims on alleged bilateral agreements between Amazon and individual manufacturers of goods sold on Amazon Marketplace, claiming that such agreements constitute horizontal "group boycotts" or "concerted refusals to deal," even though Plaintiff does not allege any horizontal agreement among the manufacturers or sellers with

4

whom it alleges Amazon conspired. *Id.* ¶ 10 (capitalization omitted).  Plaintiff attempts to characterize these agreements as "horizontal" based on Amazon's alleged dual role as the operator of Amazon Marketplace and a seller of certain goods on Amazon Marketplace. *Id.* ¶¶ 5, 19, 36, 94, 108, 111, 115, 125, 137–145.

## ARGUMENT

### I.   LEGAL STANDARD

Amazon's argument that Plaintiff lacks constitutional standing is reviewed under Federal Rule of Civil Procedure 12(b)(1). *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam).  Where a defendant challenges jurisdiction based on the pleadings alone, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," but this does not relieve a plaintiff of its burden to show jurisdiction "affirmatively." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010).  Constitutional standing is "the threshold question in every federal case"; if standing under Article III is lacking, then the court lacks jurisdiction and the complaint must be dismissed. *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (internal quotation marks omitted).

Amazon's arguments that Plaintiff lacks antitrust injury and standing, and that Plaintiff fails to state a claim, are reviewed under Federal Rule of Civil Procedure 12(b)(6). *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (evaluating antitrust standing under Rule 12(b)(6)).  To survive such a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiff fails to meet these standards.

## II.   PLAINTIFF LACKS STANDING TO BRING THIS LAWSUIT.

Plaintiff's claims should be dismissed because Plaintiff fails to allege facts sufficient to establish that it suffered any cognizable injury as required under Article III of the United States Constitution and the Clayton Act.  Additionally, Plaintiff has not demonstrated that it has the requisite "antitrust standing" to bring a claim under federal antitrust law.

### A.   Plaintiff Fails To Allege It Suffered Any Cognizable Injury.

Both the U.S. Constitution and the Clayton Act require a plaintiff to have suffered an actual or threatened injury to recover under federal antitrust law.  Article III standing "consists of three 'irreducible' elements":  (1) an "*injury-in-fact*, which is a 'concrete and particularized' harm to a 'legally protected interest'"; (2) "*causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant"; and (3) "*redressability*, or a non-speculative likelihood that the injury can be remedied by the requested relief."  *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106–07 (2d Cir. 2008) (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992)).

Even as to a claim for injunctive relief, a plaintiff needs to prove an actual or imminently threatened injury-in-fact that is both concrete and particularized.  *See, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) ("To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical . . . ."); *Pungitore v. Barbera*, 506 F. App'x. 40, 41 (2d Cir. 2012) ("Standing requires, inter alia*, that the plaintiff show an 'actual or imminent' injury in fact, and when seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future* or *continuing* harm." (citation omitted)).

6

The Clayton Act similarly requires an antitrust plaintiff to allege an injury or a threatened injury to its business or property.  15 U.S.C. § 15(a); *see also Port Dock*, 507 F.3d at 121 (plaintiff bringing suit under the Clayton Act must allege "injury in fact to its business or property caused by the antitrust violation"); *Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 51 (2d Cir. 2010) ("Section 16 of the Clayton Act affords injunctive relief only to plaintiffs who suffer 'threatened loss or damage by a violation of the antitrust laws.'" (citation omitted)).

When seeking damages, "the 'injury-in-fact' requirement means that a plaintiff must have personally suffered an injury."  *W.R. Huff*, 549 F.3d at 107; *see also Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972) (plaintiff "may not seek redress for injuries done to others"). "For an injury-in-fact, harms, including economic harms, must be imminent or actual, not merely possible."  *Waxman v. Cliffs Nat. Res. Inc.*, 222 F. Supp. 3d 281, 287–88 (S.D.N.Y. 2016).  To bring an action for injunctive relief pursuant to the Clayton Act for a Sherman Act violation, a plaintiff must "demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur."  *Freeland v. AT & T Corp.*, 238 F.R.D. 130, 156 n.22 (S.D.N.Y. 2006) (internal quotation marks omitted).

"The Court cannot decide a case with a hypothetical injury that may never occur."  *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 527 (E.D.N.Y. 2013), *aff'd*, 548 F.App'x 741 (2d Cir. 2014).  "Even an 'objectively reasonable likelihood' of harm is insufficient" to state an injury in fact—rather, "for an injury to be 'actual or imminent,' it must at least be 'certainly impending.'"  *Waxman*, 222 F. Supp. 3d at 287 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013)); *see also Scanlan v. Kodak Ret. Income Plan*, 678 F. Supp. 2d 110, 114 (W.D.N.Y. 2010) (plaintiff seeking injunctive relief lacked standing because his "threatened injury" of "potential tax consequences" was "neither concrete nor imminent, but

relie[d] upon an extended series of hypothetical events"); *SC Note Acquisitions*, 934 F. Supp. 2d at 526 (finding alleged economic injury "hypothetical" because IRS had not yet made determination as to relevant trust's tax status, and "plaintiff ha[d] not alleged that the [t]rust ha[d] had any tax liability imposed [on] it" (internal quotation marks omitted)

Here, Plaintiff alleges that it "has concerns" about certain alleged conduct involving other businesses.  Compl. ¶ 10.  But Plaintiff does not allege that it has been injured, is in imminent danger of being injured, or even that its "concerns" are based on anything it experienced. Indeed, Plaintiff does not identify a single specific product that it would have sold pursuant to its "business plan."  In its Amended Complaint, Plaintiff alleges that it has inventory of "consumer electronics purchased specifically for sale" on Amazon Marketplace, and that "Amazon's current restrictions prevent Plaintiff from freely trading brand name items in this and other categories." *Id.* ¶ 23.  But Plaintiff nowhere identifies what "restrictions" apply to the unnamed products it wishes to sell; to the contrary, Plaintiff alleges that "all of Plaintiff's anticipated product offerings fall within 'open categories,' i.e., generally requiring no specific approval prior to listing the products in the Marketplace."  *Id.*  These allegations make abundantly clear that: (1) Plaintiff has never attempted to sell any product on Amazon Marketplace, and (2) Amazon has never prevented Plaintiff from selling anything on Amazon Marketplace.

As discussed below, Plaintiff has not alleged any agreement that violates the antitrust laws.  *See infra* Part III.  But even if it had, Plaintiff does not allege the existence of any agreement that actually has harmed *Plaintiff*.  It is axiomatic that while a party has "standing to seek redress for injuries done to him, [it] may not seek redress for injuries done to others." *Moose Lodge No. 107*, 407 U.S. at 166; *W.R. Huff*, 549 F.3d at 107 ("Art[icle] III judicial power exists only to redress or otherwise to protect against injury to the complaining party.")

8

(alterations in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *see also Nat'l ATM Council, Inc. v. Visa Inc.*, 922 F. Supp. 2d 73, 80–81 (D.D.C. 2013) (allegations of restrained competition are insufficient to establish standing, because "[a] plaintiff must personally suffer the harm"). The Amended Complaint is a classic example of alleged "injuries done to others."

Another court in this District has aptly articulated and applied the longstanding rule that a plaintiff "cannot sue under the antitrust laws to challenge conduct which has not (yet) caused it to suffer injury-in-fact." *Arista Records LLC v. Lime Grp. LLC*, 532 F. Supp. 2d 556, 570 n.18 (S.D.N.Y. 2007). The court in *Arista* held that the counterclaimant, which alleged price-fixing among record companies for copyrighted recording licenses, lacked standing to sue because it failed to allege that it had "ever attempted to obtain or purchase a license from any of the counter-defendants or their respective joint ventures," and thus while "[counterclaimant's] retail competitors may have 'faced excessive wholesale prices' for licenses as a result of the alleged price-fixing scheme," the counterclaimant itself had "not alleged any facts demonstrating that it suffered such harm." *Id.* at 569.

Plaintiff has not alleged that it ever attempted to sell goods on Amazon's Marketplace, much less that it was prevented from doing so by any alleged anticompetitive practices. Having not suffered any injury as a result of the alleged unlawful conduct, Plaintiff cannot avail itself of the antitrust laws. *See id.* at 570 n.18; *see also Finkelman v. NFL*, 810 F.3d 187, 195–96 (3d Cir. 2016) (affirming dismissal of consumer fraud claims by plaintiff who never purchased ticket and therefore suffered no injury-in-fact and rejecting argument that he suffered "lost opportunity" to attend event because he "contemplated" buying ticket but "decided against it" allegedly due to high price (internal quotation marks omitted)); *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1363–64 (D.C. Cir. 2012) (dismissing Sherman Act claims where plaintiff's claimed injury was "too

speculative" and he therefore lacked Article III standing); *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008) (affirming dismissal of federal antitrust claims for lack of Article III standing where plaintiff failed to show that he "personally paid a higher price" or to "show or even allege that he himself experienced . . . any other potentially conceivable form of injury"); *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 927 (N.D. Cal. 2015) (plaintiffs who alleged price-fixing of product they had not personally purchased failed to establish injury-in-fact under Article III).  To allow otherwise would result in the Court issuing an advisory opinion where no controversy exists because Plaintiff has never actually been denied the opportunity to sell on Amazon Marketplace.

**B.    Plaintiff Lacks Antitrust Standing.**

In addition to Article III standing, an antitrust plaintiff also must have "antitrust standing."  *See, e.g.*, *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 436 (2d Cir. 2005) ("It is a well-established principle that, while the United States is authorized to sue anyone violating the federal antitrust laws, a private plaintiff must demonstrate 'standing.'").  "[A]ntitrust standing for a private plaintiff requires a showing of a special kind of antitrust injury, as well as a showing that the plaintiff is an efficient enforcer to assert a private antitrust claim."  *Port Dock*, 507 F.3d at 121 (internal quotation marks omitted).  The Second Circuit examines four factors as part of the efficient enforcer analysis: "(1) the 'directness or indirectness of the asserted injury;' (2) the 'existence of more direct victims of the alleged conspiracy;' (3) the extent to which [plaintiff's] damages claim is 'highly speculative;' and (4) the importance of avoiding 'either the risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other.'"  *In re Platinum & Palladium Antitrust Litig.*, No. 14-cv-4392, 2017 WL 1169626, at *20 (S.D.N.Y. Mar. 28, 2017) (citation omitted).  Plaintiff fails to satisfy any of the four factors.

10

Plaintiff fails to satisfy the first and second factors because it has not alleged that it suffered any injury at all, rendering impossible any finding that any injury it may have suffered was "direct."  *See Arista*, 532 F. Supp. 2d at 570 (where party could not claim that it had "suffered any actual injury," it could not allege that it had "suffered the kind of direct, non-speculative injury that would make it an efficient enforcer" (internal quotation marks omitted)).  Had there been any unlawful antitrust conspiracy here, there obviously would be "more direct victims"—those who, unlike Plaintiff, actually attempted but were prevented from selling particular products.  *See, e.g.*, *Boyd v. AWB Ltd.*, 544 F. Supp. 2d 236, 250 (S.D.N.Y. 2008) (plaintiffs who did not participate in challenged tender process were not "efficient enforcers" because there was a class of persons who "actually attempted to sell" through the process and "were precluded from doing so as a result of" the challenged conduct (brackets and internal quotation marks omitted)); *Sullivan v. Barclays PLC*, No. 13-cv-2811, 2017 WL 685570, at *17 (S.D.N.Y. Feb. 21, 2017) (plaintiffs who did not transact "directly" with defendants were not "positioned to serve as efficient enforcers").

Plaintiff fails to satisfy the third factor because its damages claim is "highly speculative." Plaintiff appears to claim damages based on profits it allegedly could have made had it become a seller on the Marketplace.  Compl. ¶ 24.  With no experience or history of selling any products online, through Amazon Marketplace or otherwise, Plaintiff's damages are "highly speculative" to say the least.  *See, e.g.*, *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 78–79 (2d Cir. 2013) (affirming dismissal of complaint and finding that alleged damages, based on competitive bids plaintiff claimed he would have submitted and won, were "speculative at best" where there was "no reason why [plaintiff] would have been more certain than [other, competing] entities to win the contracts"); *IBM Corp. v. Platform Sols., Inc.*, 658 F. Supp. 2d

603, 613 (S.D.N.Y. 2009) (extent of plaintiff's alleged losses from "inability to sell" products for

which manufacturer would no longer license operating system were "highly speculative").

Finally, the risk of "duplicate recoveries" is significant.  For Plaintiff to prove its claims,

it would have to prove that but for the alleged unlawful conduct, Plaintiff would have made sales

that instead were made by Amazon itself or by favored manufacturers/sellers who use Amazon's

Marketplace to reach consumers.  Plaintiff alleges, however, that there are any number of other

would-be sellers seeking to make sales, who supposedly were prevented from doing so by the

conduct Plaintiff alleges.  Compl. ¶ 1 (alleging Amazon's restraint of "hundreds or thousands of

small-business sellers on its platform-based Marketplace at amazon.com").  Even if Plaintiff had

identified the specific products that it would have sold, it cannot possibly demonstrate how

competition would have played out in a market where it has never sold anything in the past.

It is not possible for the Court to adjudicate among the competing claims of potentially

large numbers of would-be competitors who say they would have made the same sale to the same

customer as Plaintiff.  The ability of every person purporting to be a would-be third-party seller

of "consumer electronics" on Amazon's Marketplace to bring suit for purportedly foregone

profits on the same set of sales is exactly what the Second Circuit sought to avoid when it

instructed courts to examine the risk of "duplicat[e] recoveries."  *See, e.g.*, *Gatt Commc'ns*, 711

F.3d at 79 (where other dealers could assert "just as plausibly as [plaintiff]" that absent alleged

anticompetitive conduct, they would have bid on and won contracts, there was a "risk of multiple

and duplicative recoveries"); *In re Dig. Music Antitrust Litig.*, 812 F. Supp. 2d 390, 404

(S.D.N.Y. 2011) (finding a "strong potential for duplicative recoveries" where plaintiffs' claims

were "hard to disentangle" from claims of other purchasers and "the injury they seek to remedy

arises from the same alleged misconduct").  Because all of the "efficient enforcer" factors weigh against Plaintiff, it lacks the requisite "antitrust standing" to bring its claims.

### C. Plaintiff Has Not Adequately Pled Potential Competitor Status, and Even if It Had, It Still Fails To Plead an Actual or Threatened Injury-in-Fact.

Plaintiff apparently believes it can evade the strict standing requirements enunciated above by claiming status as a "potential competitor."  Compl. ¶ 21.  Plaintiff is wrong—regardless of whether it has adequately pled facts sufficient to demonstrate that it is a potential competitor (and it has not, as explained below), it still must plead actual injury-in-fact or the imminent threat of such injury.  Here, Plaintiff has failed to plead injury-in-fact or facts demonstrating that it is a potential competitor in any cognizable relevant antitrust market.

As an initial matter, even if Plaintiff could establish itself as a potential competitor, it still would need to show that it suffered an actual injury-in-fact or is under imminent threat of suffering such an injury—that it is actually being prevented from competing.  As discussed above, Plaintiff does not plead that it has been prevented from selling anything.  Without such a showing, its claims fail regardless of whether it is a potential competitor in any relevant market. *See Arista Records*, 532 F. Supp. 2d at 567 n.13, 568–69 (dismissing claim where plaintiff failed to establish that it suffered injury-in-fact even though plaintiff adequately pled it was potential competitor in relevant market).

To establish standing as a potential competitor, a plaintiff must plead facts showing that "it was 'ready, willing and able' to enter the market but for the anticompetitive conduct." *Fido's Fences, Inc. v. Radio Sys. Corp.*, 999 F. Supp. 442, 450 (E.D.N.Y. 2014) (quoting *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 611 F. Supp. 379, 385 n.14 (N.D.N.Y. 1985), *aff'd*, 781 F.2d 879 (Fed. Cir. 1985)); *see also Biocad JSC v. F. Hoffmann-La-Roche, Ltd.*, No. 16-civ-4226, 2017 WL 4402564, at *4 (S.D.N.Y. Sept. 30, 2017) (to allege antitrust injury, "a would-be

13

competitor must demonstrate its intention and preparedness to enter the relevant market"
(internal quotation marks omitted)).  Courts look at the following factors to determine whether
plaintiff has the requisite intent and preparedness to qualify as a potential competition:
(1) plaintiff's background and experience in the proposed business, (2) any affirmative action by
plaintiff to engage in the activity, (3) plaintiff's ability to finance the enterprise, and
(4) consummation of contracts to enter the business.  *Fido's Fences*, 999 F. Supp. 2d at 450.
Plaintiff has failed to plead facts establishing that it was sufficiently prepared and able to sell any
product on Amazon Marketplace, much less that it was prepared to enter the alleged relevant
market.

Plaintiff has no experience in retail sales or online sales of any kind, and has no
background to suggest that it could successfully compete in any consumer electronics sales
market (something completely unrelated to its appliance repair business).  Plaintiff never applied
to be a seller on Amazon Marketplace and has not identified a specific product it was prepared to
sell—it only alleges some unspecified inventory of "consumer electronics," Compl. ¶ 23, and a
"pro forma" concept of average prices and profits based on an Amazon Seller's Survey that does
not specify what products were sold by the survey participants.  *Id.* ¶ 24 & n.12.

Plaintiff alleges in conclusory fashion that it is "adequately funded from available
operating funds to commence contemplated Marketplace operations and enjoys established,
years-long banking and supplier relationships and terms."  Compl. ¶ 22.  And Plaintiff further
alleges it "has the business hardware and facilities, e.g., weighing and measuring equipment for
packages, smartphone, computer resources, financial systems software, and invoicing software
requisite to selling on the Marketplace."  *Id.*  But these meager allegations do not evidence
sufficient affirmative preparedness or intention to successfully engage in the business of selling

any particular consumer electronics product.  And because Plaintiff does not identify what specific products it intends to sell, one cannot conclude that these allegations demonstrate the intention and preparedness to enter any cognizable antitrust relevant market.  Plaintiff's allegations are simply not sufficient to demonstrate that it is a "potential competitor" under the pertinent legal standard.  *See Practice Perfect, Inc. v. Hamilton Cty. Pharm. Ass'n*, 732 F. Supp. 798, 802 (S.D. Ohio 1989) (dismissing claims by plaintiffs with "no special background or experience" in relevant market and noting that "it is the Court's task to 'distinguish the serious potential competitor who has been illegally kept out of the market from the inchoate business enterprise with a mere hope of entry'" (citation omitted)); *Fla. Seed Co. v. Monsanto Co.*, 915 F. Supp. 1167, 1176 (M.D. Ala. 1995) (rejecting as "conclusory" plaintiff's allegations that it was potential competitor where there were no allegations as to plaintiff's "financial ability to enter the market, the appropriate background and experience that makes success possible and steps evidencing an intent to enter the market"), *aff'd*, 105 F.3d 1372 (11th Cir. 1997); *Wooster Indus. Park, LLC v. City of Wooster*, 55 F. Supp. 3d 990, 997 (N.D. Ohio 2014) (plaintiffs who "own, or may otherwise have available to them" properties for development and "had been in contact" with cellular provider about "the possible development of property" failed to plead "*intention and preparedness* to compete" (internal quotation marks omitted)).

## III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT.

Even if Plaintiff could establish standing to bring these claims, the Amended Complaint still would be subject to dismissal, because Plaintiff fails to establish that its claims are subject to *per se* or quick look analysis, and it fails to adequately allege harm to competition in a relevant antitrust market as required under a rule of reason analysis.

A. **Plaintiff Fails To Allege Any Violation That Could Be Analyzed Under the** *Per Se* **or "Quick Look" Modes of Antitrust Analysis.**

Just two weeks before filing its Amended Complaint, Plaintiff disclaimed that it was asserting a *per se* claim, informing this Court that it had no present Rule 11 basis for alleging such a claim. Pl.'s Sept. 25, 2017 Letter to Court, ECF Dkt. 19, at 5 ("That the Complaint does not now contain a count entitled 'Per Se Liability' reflects only that Plaintiff is not fully informed and takes Rule 11 seriously."). Regardless of Plaintiff's "unambiguous" change of position, the alleged agreements are not properly analyzed under the *per se* or "quick look" modes of analysis, and those claims therefore should be dismissed.

### 1. **Plaintiff Does Not Allege Facts Supporting a** *Per Se* **Claim.**

"Per se rules of illegality are appropriate only when they relate to conduct that is manifestly anticompetitive." *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49–50 (1977). Plaintiff invokes the *per se* rule based solely on the notion that Amazon's status as both the Amazon Marketplace provider and a retail seller on that Marketplace renders it an actual or potential horizontal competitor of the third-party resellers and manufacturers who also sell on Amazon Marketplace. *See, e.g.*, Compl. ¶¶ 94, 108, 111, 125, 137–145. But this argument for *per se* treatment has been rejected by the Second Circuit, which analyzes such arrangements—in which a defendant participates in multiple levels of the distribution chain—as vertical in nature and therefore subject to the rule of reason. *See Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 243 (2d Cir. 1997) ("[V]ertical restraints are generally subject to 'rule of reason' analysis," even "if the distributor and manufacturer also compete at the distribution level, where, as here, the manufacturer distributes its products through a distributor and independently (so-called 'dual distribution' arrangements)."); *Copy-Data Sys., Inc. v.*

*Toshiba Am., Inc.*, 663 F.2d 405, 408–10 (2d Cir. 1981).

Plaintiff fundamentally confuses when *per se* treatment is an appropriate mode of antitrust analysis.  In this case, there can be no dispute that Amazon is in a vertical relationship with Amazon Marketplace sellers.  Amazon provides an online marketplace; in some instances, manufacturers seek to transact directly with consumers on the Marketplace, and in other instances they enter into agreements with Amazon to sell their products on the Marketplace. That Amazon may, in some instances, sell products on the Marketplace does not transform any alleged agreement with a manufacturer into a horizontal agreement subject to *per se* treatment. Indeed, even if Amazon entered into an exclusive agreement with a branded manufacturer that Amazon would be the only seller of that brand on Amazon Marketplace, such an agreement would not be subject to *per se* illegality under any circumstance.  Vertical agreements, including exclusive distribution agreements, are evaluated under the rule of reason.  *See Cont'l T.V.*, 433 U.S. at 58–59; *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 907 (2007).  No matter how hard Plaintiff tries to invent a horizontal agreement, none exists in these circumstances.

### 2.  Plaintiff Does Not Allege a "*Per Se* Group Boycott."

Plaintiff also cannot rely upon its attempted characterization of "group boycotts" or "concerted refusals to deal," Compl. ¶¶ 10, 19, 157–159, as a basis to escape the applicability of the rule of reason.  Plaintiff alleges, at most, a series of exclusive, vertical agreements between Amazon on the one hand, and a manufacturer/favored seller on the other.  Plaintiff does not allege that manufacturers and/or sellers conspired with each other to force Amazon to exclude Plaintiff.  Such vertical agreements do not constitute a "group boycott."  *See NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 136 (1998) (agreement between customer and supplier to exclude other supplier is vertical exclusive agreement, not group boycott); *PepsiCo, Inc. v. Coca-Cola*

*Co.*, 315 F.3d 101, 110 (2d Cir. 2002) (per curiam) ("*NYNEX . . .* squarely held that a horizontal

agreement is a prerequisite in a group boycott case."); *Wellnx Life Scis., Inc. v. Iovate Health*

*Scis. Research Inc.*, 516 F. Supp. 2d 270, 292 (S.D.N.Y. 2007) ("Since plaintiff's amended

complaint fails to adequately plead the existence of a horizontal agreement, plaintiff has failed to

state a claim for a *per se* violation of section 1 of the Sherman Act under a group boycott

theory.").

    Even if Plaintiff had alleged horizontal agreements, its claim could not be analyzed under

the *per se* rule, which applies only to the tiny minority of group boycotts that "involve[] conduct

so plainly harmful to competition and so obviously lacking in any redeeming pro-competitive

values that [they are] conclusively presumed illegal without further examination"—the

overwhelming majority of group boycotts must instead be analyzed under the rule of reason.

*Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 53 n.5 (2d Cir. 2016) (internal

quotation marks omitted).  "[T]he category of restraints classed as group boycotts is not to be

expanded indiscriminately."  *Fed. Trade Comm'n v. Indiana Fed'n of Dentists*, 476 U.S. 447,

458 (1986) (citing *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S.

284 (1985)).

    In *Northwest Wholesale Stationers*, the Supreme Court explained how to ascertain

whether a particular alleged group boycott falls within that minority of *per se* unlawful

agreements.  First, a court should assess whether the boycott "cut[s] off access to a supply,

facility, or market necessary to enable the boycotted firm to compete"; second, it should

determine whether "the boycotting firms possess[] a dominant position in the relevant market";

and third, it must ask whether the practices in question were "not justified by plausible

arguments that they were intended to enhance overall efficiency and make markets more

competitive."  472 U.S. at 294; *see also, e.g.*, *Diaz v. Farley*, 215 F.3d 1175, 1183 (10th Cir.

2000); *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 949–50 (9th Cir.

1998).

Plaintiff's allegations do not meet any of the above criteria.  Most importantly, Plaintiff

fails to allege, other than in the most conclusory terms, that access to Amazon Marketplace is

essential to allow it to sell its unidentified products.  Although the Amended Complaint contains

conclusory claims that third-party sellers "depend[] on the Marketplace for survival as a

business," Compl. ¶ 62, and that Amazon's "dominance as a platform effectively necessitates

that independent merchants use its site," *id.* ¶ 68, Plaintiff provides no factual basis that could

allow a trier of fact to embrace those bare "labels and conclusions."  *Bell Atl. Corp.*, 550 U.S. at

555.  Online sales comprise a small fraction of total retail sales in the United States, and Amazon

is one of myriad places where consumers can shop, and Plaintiff can sell.

Plaintiff also has not adequately alleged that Amazon has market power in any market

pertinent to Plaintiff's alleged exclusion.  Plaintiff is not seeking to compete by selling a broad

array of goods as Amazon does; rather, Plaintiff apparently seeks to sell a limited number of

products—appliance parts and consumer electronics.  Plaintiff has not pled facts from which this

Court could conclude that Amazon is a dominant seller of any such unidentified products; nor

could it—there are any number of potential retail outlets (online and otherwise) from which to

purchase these products.  If a plaintiff fails to adequately plead that the defendant "possesses

market power or exclusive access to an element essential to effective competition, the conclusion

that expulsion is virtually always likely to have an anticompetitive effect is not warranted."  *Nw.*

*Wholesale Stationers*, 472 U.S. at 296.

Last, Plaintiff plainly has not demonstrated that the practices in question were "not

19

justified by plausible arguments that they were intended to enhance overall efficiency and make markets more competitive." *Id.* at 294.  Plaintiff specifically identifies counterfeiting and intellectual property rights protection concerns as purported pretexts for actions taken by Amazon to remove certain sellers.  Plaintiff concedes that these concerns are valid, but disputes that Amazon is applying its policies in a fair or appropriate way.  Such an allegation is not a candidate for *per se* treatment because preventing the sale of counterfeit or unauthorized goods is unquestionably procompetitive.

### 3.      Plaintiff's Claims Do Not Qualify for "Quick Look" Treatment.

For similar reasons, Plaintiff cannot avoid a full market evaluation of the alleged unlawful conduct through a "quick look" shortcut—which it seeks to do based on its allegation that Amazon uses copyright- and trademark-infringement complaints by brand manufacturers as a basis for preventing third parties from selling the brand at issue.  Compl. ¶¶154–170.  The "quick look" approach, which can permit a plaintiff to benefit from a rebuttable presumption that competition has been harmed, is limited to conduct that is so pernicious that even one with "'a rudimentary understanding of economics'" would conclude such conduct harms competition. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 317 (2d Cir. 2008) (quoting *Cal. Dental Ass'n v. Fed. Trade Comm'n*, 526 U.S. 756, 770 (1999)).  It cannot apply where there are plausible procompetitive justifications for the conduct at issue.  *See id.* at 318; *see also, e.g.*, *Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145, 1155 (9th Cir. 2003) ("When a defendant advances plausible arguments that a practice enhances overall efficiency and makes markets more competitive, per se treatment is inappropriate, and the rule of reason applies.").

Here, the procompetitive justifications for the challenged conduct are not merely plausible—they are acknowledged in the Amended Complaint:  Plaintiff concedes there are

procompetitive reasons to implement intellectual property takedown procedures, it merely claims the manner in which Amazon pursues that goal is overbroad.  Compl. ¶¶ 10, 103–108, 128–129. In this circumstance, the Court cannot presume harm to competition; rather, it must examine the particular facts surrounding any given action before deciding whether the conduct promotes or harms competition.

Independent of whether any takedown was justified, antitrust jurisprudence has long recognized that there are procompetitive reasons for regulating and restricting dealers that sell the very same brands—and that where the brands so restricted face interbrand competition, any restrictions on intrabrand competition do not harm consumers.  *See, e.g.*, *Cont'l T. V.*, 433 U.S. at 54–57; *see also, e.g.*, *Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186, 190 (2d Cir. 1992) (discussing valid business justifications for jacket manufacturer's refusal to deal with retailer unless it agreed not to sell jackets to other dealers, including that restrictions allowed manufacturer to "select only those retailers that are consistent with the quality and image it wishes to project for its products" and to "identify and combat" counterfeit goods).[1]  Thus, "quick look," which is inappropriate where the defendant demonstrates a plausible procompetitive justification, cannot apply.  Instead, the Court must use the rule of reason to assess whether the procompetitive effects outweigh any harm to competition posed by the restraint at issue.  *Madison Square Garden, L.P. v. Nat'l Hockey League*, 270 F. App'x 56, 58 (2d Cir. 2008).

---

[1] Amazon also has a legitimate interest in preventing the sale of counterfeit, intellectual property-infringing, expired, or incorrectly labeled goods that could damage not only the manufacturer's brand, but Amazon's as well.

### B.      Plaintiff Fails To Plead the Elements of a Rule of Reason Claim.

Having failed to plead facts supporting either a *per se* or "quick look" claim, Plaintiff must proceed under the rule of reason, which requires a plenary examination of the market, the restraint at issue, and any procompetitive or anticompetitive effects on competition, to determine "whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Leegin Creative Leather Prods.*, 551 U.S. at 885–86 (internal quotation marks omitted).  Plaintiff fails to plead facts demonstrating that its alleged exclusion from Amazon Marketplace has impacted competition in any cognizable relevant market.

### 1.      Plaintiff's Alleged Exclusion Does Not Harm Competition.

It is blackletter law that harm to a competitor does not, by itself, equate to harm to competition.  *See, e.g.*, *Wellnx Life Scis. Inc.,* 516 F. Supp. 2d at 289 ("Because the antitrust laws protect competition as a whole, evidence that plaintiffs have been harmed as individual competitors will not suffice." (internal quotation marks omitted)).  Plaintiff claims that it has been excluded from Amazon Marketplace.  Even if that were so, it does not demonstrate harm to competition in any relevant market.

"A plaintiff seeking to prove an antitrust violation under the rule of reason must initially show that the challenged action adversely affected competition in the relevant market." *MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 182 (2d Cir. 2016).  Plaintiff's failure to identify the particular products it allegedly would have sold precludes any finding that Plaintiff's exclusion from selling such products has harmed competition.  There is no basis to predict that Plaintiff's participation on Amazon Marketplace would result in greater total sales volumes, lower prices, or greater product variety for any product.  That Plaintiff has never sold a single product online, and has never sold consumer electronics in any manner, makes any claim

of harm to competition beyond speculation.  Exclusion of a single alleged potential seller cannot, under these circumstances, constitute harm to competition.

Plaintiff also never alleges that any of the products that were the subject of purportedly exclusive vertical agreements had market power in any relevant product market, which is fatal to its claim.  *See In re Set-Top Cable Television Box Antitrust Litig.*, No. 08 MD 1995 (PKC), 2011 WL 1432036, at *11 (S.D.N.Y. Apr. 8, 2011) ("An assessment of market power must be grounded in the relevant product market."), *aff'd sub nom. Kaufman v. Time Warner*, 836 F.3d 137 (2d Cir. 2016).  Where the alleged restraint on competition affects only intrabrand competition (*i.e.*, competition among retailers selling the same branded product), rather than interbrand competition (*i.e.*, competition among competing brands within the same product market), no antitrust claim can succeed absent a showing of interbrand market power.  *Cont'l T.V.*, 433 U.S. at 54–55; *Elecs. Commc'ns Corp.*, 129 F.3d at 241 (exclusion of single product dealer cannot harm competition, and thus no antitrust claim can lie, unless product at issue has market power); *42nd Parallel N. v. E St. Denim Co.*, 286 F.3d 401, 405 (7th Cir. 2002) (affirming dismissal of complaint alleging dealer exclusion for failure to allege manufacturer market power); *Bogan v. Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999) ("The agreement here is far from a typical *per se* illegal restraint, consistent with the fact that antitrust law shows more concern to protect [inter-] rather than intrabrand competition.").  Without any allegation that the products that Plaintiff allegedly would have sold have market power, the fact that Plaintiff has chosen not to sell such products raises no competitive issue—interbrand competition from other competing brands ensures a competitive marketplace.

### 2. Plaintiff Has Not Pled Facts To Support an Online Retails Sales Relevant Market.

To survive a motion under Rule 12(b)(6), a party bringing an antitrust claim under the rule of reason must, among other things, "explain why the market it alleges is the relevant, economically significant product market." *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 171–72 (S.D.N.Y. 1995). "This relevant product market must include all products that are reasonably interchangeable, and this alleged product market must be plausible." *Theatre Party Assocs. v. Shubert Org.*, 695 F. Supp. 150, 153–54 (S.D.N.Y. 1988) (citations omitted). Here, Plaintiff alleges a relevant market consisting of online retail sales. Compl. ¶ 63a. Although Plaintiff alleges that "[o]nline marketing has several advantages over traditional marketing generally precluding substitution of traditional retail-store shopping," *id.*, it does not seriously contend that it seeks to be a competitor in a full-blown online retail sales market. Instead, Plaintiff allegedly wishes to sell a narrow set of unidentified goods. Without identifying those goods, there can be no evaluation of whether there is a relevant online market for sales of those particular products. For example, given the extraordinary number of online and offline channels for purchasing "consumer electronics," Plaintiff has not adequately pled facts demonstrating the existence of an online consumer electronics market, much less that Amazon has market power in such a market.

Plaintiff also does not explain why it makes any difference to consumers whether they purchase directly from a manufacturer's website, from any other online retailer, or from a brick-and-mortar retail establishment. *See, e.g.*, *Concord Assocs. v. Entm't Props. Tr.*, No. 12-cv-1667, 2014 WL 1396524, at *19 (S.D.N.Y. Apr. 9, 2014) (dismissing § 1 claim where plaintiffs failed to allege why other obvious substitutes should be eliminated from market), *aff'd*, 817 F.3d 46 (2d Cir. 2016); *Am. Sales Co. v. AstraZeneca AB*, No. 10 Civ. 6062 (PKC), 2011 WL

1465786, at *3 (S.D.N.Y. Apr. 14, 2011) (dismissing Sherman Act claim where plaintiff's allegations as to relevant product market were "limited, vague and conclusory" and made "no attempt" to distinguish potential competitor products); *Commercial Data Servers, Inc. v. IBM Corp.*, 166 F. Supp. 2d 891, 897 (S.D.N.Y. 2001) (dismissing antitrust claim where complaint failed to explain why "other types of computers would not be functionally interchangeable with, and/or exhibit cross-elasticity of demand for 'mainframes'"). Plaintiff has not pled sufficient facts to support a general "online retail sales" market that is separate and distinct from other retail sales channels.

*     *     *

Even if its allegations regarding Amazon's purported vertical agreements with manufacturers or "favored" sellers were accurate (which they are not), Plaintiff could not establish, whether by presumption or proof, that the alleged agreements caused any harm to competition in a properly pled relevant market. It therefore cannot state a claim under Section 1 of the Sherman Act.

## CONCLUSION

Plaintiff's Amended Complaint should be dismissed with prejudice. Having taken the opportunity to amend its original complaint after reviewing Defendant's pre-motion letter outlining all of the legal deficiencies set forth above, Plaintiff should not be afforded another chance to amend because it cannot cure the fundamental shortcomings in its case. Under these circumstances, allowing additional amendment would be futile and dismissal with prejudice is appropriate. *See Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 239 (2d Cir. 2008); *Chudnovsky v. Leviton Mfg. Co.*, 158 F. App'x 312, 314 (2d Cir. 2005).

Dated:  October 27, 2017     Respectfully submitted,

             WILLIAMS & CONNOLLY LLP


            By:  /s/*John E. Schmidtlein*
               John E. Schmidtlein (*pro hac vice*)
               Jonathan B. Pitt (S.D.N.Y. Bar No. jp0621)
               725 Twelfth Street, N.W.
               Washington, DC  20005
               Tel.:  (202) 434-5000

               1330 Avenue of the Americas, Suite 23A
               New York, NY 10019
               Tel.: (212) 328-1839

               *Attorneys for Defendant*
               *Amazon Services LLC*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of October 2017, in accordance with Fed. R. Civ. P.

5 and the General Order on Electronic Case Filing (ECF), the foregoing was served pursuant to

the District Court's ECF system on:

Mark Schlachet
Law Offices of Mark Schlachet
3515 Severn Road
Cleveland, OH 44118
markschlachet@me.com

*Attorney for Plaintiff*

/s/*Jonathan B. Pitt*
Jonathan B. Pitt